## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

INVESTMENT REALTY SERVICES, LLC                    **COMPLAINT**
On behalf of themselves and others
similarly situated.

                                                                                     **JURY DEMAND**


      Plaintiff,


                                                                       Case No.
v.                                                                          HON:


CITY OF ALLEN PARK

      Defendant.
_____

THE LAW OFFICES OF AARON D. COX, PLLC
Aaron D. Cox (P69346)
Co-Counsel for Plaintiff
23380 Goddard Rd.
Taylor, MI 48180
734-287-3664
Aaron@aaroncoxlaw.com

MARK K. WASVARY, P.C.
Mark K. Wasvary (P51575)
Co-Counsel for Plaintiff
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
248-649-5667
_____

### CLASS-ACTION COMPLAINT

INVESTMENT REALTY SERVICES, LLC on behalf of all others similarly

situated, by and through the undersigned attorneys from THE LAW OFFICES OF

AARON D. COX, PLLC and MARK K. WASVARY, P.C., states for this

Complaint as follows:

## I.     NATURE OF THE ACTION

1.     This action is brought on behalf of a class of all persons who own

residential real property in the City of Allen Park (the "City").

2.     The State of Michigan under the Home Rule City Act (MCL 117.1 et

seq.) permits municipal corporations like the City to adopt certain laws, codes, or

rules for building maintenance issues.

3.     MCL 117.3 (K) specifically addresses the adoption of certain building

codes:

> Except as otherwise provided under the Stille-DeRossett-Hale
> single state construction code act, 1972 PA 230, MCL 125.1501 to
> 125.1531, a city may adopt a law, code, or rule that has been
> promulgated and adopted by an authorized agency of this state
> pertaining to fire, fire hazards, fire prevention, or fire waste, and a
> fire prevention code, plumbing code, heating code, electrical code,
> building code, refrigeration machinery code, piping code, boiler
> code, boiler operation code, elevator machinery code, an
> international property maintenance code, or a code pertaining to
> flammable liquids and gases or hazardous chemicals, that has been
> promulgated or adopted by this state, by a department, board, or
> other agency of this state, or by an organization or association that
> is organized and conducted for the purpose of developing the code,
> by reference to the law, code, or rule in an adopting ordinance and
> without publishing the law, code, or rule in full. The law, code, or
> rule shall be clearly identified in the ordinance and its purpose
> shall be published with the adopting ordinance. Printed copies of
> the law, code, or rule shall be kept in the office of the city clerk,
> available for inspection by, and distribution to, the public at all
> times. The publication shall contain a notice stating that a complete
> copy of the law, code, or rule is made available to the public at the

office of the city clerk in compliance with state law requiring that records of public bodies be made available to the general public.

4.      The City has adopted a number of codes pursuant to the Home Rule City Act and MCL 117.3 (K).

5.      Chapter 10, Article III, of the City's codes adopts the 2009 version of the International Property Maintenance Code (IPMC).

6.      The IPMC is the City's guideline for issuing a certificate of compliance for existing residential real property in the City.

7.      Chapter 10, Article IV is the City's code for regulating residential rental housing in the City. This Article requires all residential real property to pass inspections pursuant to the IPMC.

8.      Sec 10-119 specifically compels mandatory inspections of all residential rental units in the City for compliance with the IPMC. Such inspections are performed under Chapter 10, Article IV for IPMC compliance (see Sec. 10-120).

9.      Sec. 104.3 of the IPMC expressly authorizes the City's code official to enter any premises upon reasonable cause to perform an inspection of the property.

10.     Sec 10-129 makes any violation of the code a crime in accordance with violations under any other applicable code, such as an alleged violation of the IPMC.

11.     Sec 10-185 (c) of the City's code specifically states that "Any person

3

who refuses to allow an inspection required under this article or interferes with the code official in the discharge of his duties shall be guilty of a misdemeanor…" Sec 10-185 (C) and Sec 104.3 of the IPMC will collectively be referred to in this complaint as the "Inspection Ordinances."

12.     The Inspection Ordinances also apply to any inspection performed on any real property in the City (See Sec. 10-26 (c)), including commercial properties (See generally City Zoning Code Sec. 52-23 through 52-56).

13.     The Inspection Ordinances make inspections of rental property within the City mandatory.

14.     The Inspection Ordinances mandate the City officials perform these inspections and specifically authorize City officials to enter homes without a warrant "at reasonable times."

15.     The Inspection Ordinances make it a crime to refuse the City's inspections.

16.     Inspections under these codes and ordinances are performed by individuals trained in these codes and their enforcement (the "Code Official"). The Code Official knows, or should know, the requirements of the Inspection Ordinances and other applicable laws.

17.     An owner of real property who fails to permit the City to inspect their property is denied a certificate of compliance and cannot lawfully rent or occupy

their property in the City.

18.    An owner of rental property who fails to permit the City to inspect their property is also charged with misdemeanor criminal violation for refusing to permit a warrantless search of their property.

19.    An owner of rental property who fails to permit the City to inspect their property is also subject to having liens placed on their property as a result of the refusal.

20.    Defendant has impeded and threatened to further unconstitutionally impede Plaintiff's, and those similarly situated, right to be free from warrantless searches without cause by maintaining, implementing and enforcing their Inspection Ordinances.

## II.    WHAT HAPPENED TO PLAINTIFF HAPPENS TO EVERY OTHER OWNER OF REAL PROPERTY IN THE CITY

21.    Plaintiff incorporate the preceding paragraphs.

22.    The plight of Plaintiff illustrates the dangers of the system set forth by the City.

23.    Plaintiff INVESTMENT REALTY SERVICES ("IRS") purchased the property commonly known as 15539 Euclid, Allen Park, MI (the "Property") on or about October 13, 2017.

24.    IRS had the exclusive right to the use and control of the Property after its acquisition.

25.    On or about February 22, 2018 the City issued IRS a misdemeanor criminal violation for "failure to obtain a rental inspection." **Exhibit 1** (the "Ticket").

26.    The sole reason that the City issued the ticket to IRS is that they either were refused access to the Property for inspection or that IRS did not permit the City to inspect the Property.

27.    IRS retained counsel and challenged the criminal tickets and the criminal charges were dismissed.

28.    In the event IRS, or any other owner of real property in the City, refuses to permit the City's mandatory inspection they are denied their right to lawfully rent, use, or occupy property in the City of Allen Park.

29.    It is the policy and custom of the City, pursuant to its Inspection Ordinances, to perform mandatory, warrantless searches of all real property within the City in violation of the Fourth Amendment of the United States Constitution.

30.    Under these unconstitutional practices the City charges and collects inspection fees of no less than $150.00 per occurrence and registration fees of no less than $200.00 per occurrence.

### III. PARTIES

31.    Plaintiff incorporate the preceding paragraphs.

32.    Plaintiff Investment Realty Services, LLC is a Michigan Limited

Liability Company whose registered office address is located in the City of Taylor, Michigan.

33.    Defendant City of Allen Park is a municipal corporation located within Wayne County in the State of Michigan.

## IV.    JURISDICTION AND VENUE

34.    Plaintiff incorporate the preceding paragraphs.

35.    Jurisdiction by this Court over Plaintiff' constitutional claims is proper pursuant to 28 USC § 1343 and 28 USC § 1331.

36.    To the extent necessary, supplemental jurisdiction over any state law claims is proper pursuant to 28 USC § 1367.

37.    Venue is proper in this District pursuant to 28 USC § 1391 because the District is where the Defendants reside, where a substantial part of the events and omissions giving rise to Plaintiff' claims occurred, and where a substantial part of all properties subject to the action are located.

38.    As additional Class Plaintiff are identified, this District will remain the most convenient venue in which all future cases can be considered and consolidated as necessary.

## V.    CAUSES OF ACTION

### COUNT ONE
### VIOLATION OF DUE PROCESS / UNCONSTITUTIONAL CONDITIONS DOCTRINE
### *(Forcing Plaintiff to Forfeit their Constitutional*

*Rights in order to Rent Property)*

39. Plaintiff incorporates the preceding paragraphs.

40. The Fifth and Fourteenth Amendments to the U.S. Constitution make it unconstitutional to deprive a person of their property without due process of law and just compensation.

41. Plaintiff has a protected property interest in renting property and earning income from doing so.

42. Plaintiff also has a right under the Fourth Amendment against unreasonable searches and seizures and the Amendment only permits searches based on probable cause and the issuance of a warrant.

43. As adopted by Allen Park, the Inspection Ordinances authorizes Code Officials mandatory warrantless searches of real property in the City for the purpose of inspection or whenever Code Officials believe the City's Code has been violated. In that regard the Code provides for their right of inspection without setting forth any warrant procedures in violation of the Fourth Amendment and long standing legal precedent (See *Camera v. Municipal Court*).

44. Where an inspection is not performed for any reason, Allen Park does not secure a warrant, but instead coerces property managers, homeowners, and tenants into consenting to entry and a search under the threat of criminal charges, fines, penalties, liens, and refusal to issue certificates of compliance.

45. Under the Inspection Ordinances there is no ability for an owner to object to the building official's entry and inspection into the owner's property and there is no mechanism in place for a building official to obtain a search warrant if an owner of property were to try to object to such entry.

46. What's worse is that the City's Inspection Ordinances purports to make the lawful refusal of an unconstitutional warrantless search a crime punishable by up to 90 days in jail.

47. As a result, Plaintiff, and every other owner of real property in the City, is deprived of their right against warrantless searches and otherwise must pay inspection fees, fines, and penalties in order to gain compliance or face the unconstitutional alternative of being deprived of their rights.

48. In the event Plaintiff, or those others similarly situated, exercise their right to be free from a warrantless search they are deprived of their right to lawfully rent property in Allen Park or they are punished by the issuance of criminal penalties for such refusal.

49. Defendant may not lawfully deny a benefit to anyone who chooses to exercise a constitutional right.

50. Accordingly, the Inspection Ordinances adopted by the City are unconstitutional and unenforceable on their face and their application to Plaintiff has resulted in numerous violations of their rights.

51. As set forth above the City conducted an unconstitutional registration and inspection scheme and has wrongfully collected potentially millions of dollars in ill-gotten registration and inspection fees.

52. The City's conduct as described herein coerces Plaintiff, and those similarly situated, to give up their constitutional right to be free from unreasonable searches and seizures.

53. The City's conduct as described herein violates the Unconstitutional Conditions Doctrine and subjects the City to penalties for same.

**COUNT TWO**
**VIOLATION OF FOURTH AMENDMENT**
*(Warrantless Searches)*

54. Plaintiff incorporates by reference the preceding paragraphs.

55. The Fourth Amendment to the U.S. Constitution prevents the government from conducting unreasonable searches and provides that warrants, based on probable cause, are required before searching a house.

56. The adoption of Inspection Ordinances constitutes the City's express policy and practice of entering real properties without first satisfying the dictates of the Fourth Amendment and thus, on its face, the Inspection Ordinances is patently unconstitutional and should be struck in its entirety.

57. Alternatively, the City has a policy and practice of punishing Plaintiff and those similarly situated who fail to permit an inspection of their real property for

any reason by pursuing criminal charges against Plaintiff and those similarly situated instead of seeking a proper administrative search warrant. As applied, this practice violates the 4th Amendment of the U.S. Constitution.

58. The City's policy and practice is that if an inspection is refused for any reason the owner of the property is charged criminally for failure to permit an inspection.

59. Under the guise of the City's unconstitutional inspection requirements the City has collected millions of dollars in unlawful registration and inspection fees.

60. Plaintiff has had its right to be free from unreasonable searches and seizures violated and has been harmed as a result.

61. Plaintiff and those similarly situated are denied their constitutional right to the use and income generated from their real property if they fail to permit the City's warrantless searches and as such have been damaged.

## COUNT THREE
## REMEDY OF ASSUMPSIT

62. Plaintiff incorporates the preceding paragraphs.

63. The City has been extracting fees and/or penalties from Plaintiff and those similarly situated by conducting the illegal rental registration and inspection scheme as set forth above.

64. Pursuant to the City Code, the City may place a lien on a property for failure of the property owner to pay penalties for alleged code violations.

11

65. Michigan law provides that an assumpsit action may be maintained against a municipality and/or its divisions without regard to government immunity when restitution is being sought for an illegal or inappropriate assessment that is authorized to become a lien on property.

## COUNT FOUR
## MUNICIPAL LIABILITY

66. Plaintiff incorporates the preceding paragraphs.

67. As set forth herein, the City and its Agents have administered the Inspection Ordinances in ways which cause and result in depriving owners of rental real property in the City of their constitutional rights and otherwise violates Plaintiff's constitutional right to free from unlawful searches and seizures.

68. In this regard and as a routine part of their policies and customs, the City deprived Plaintiff, and thousands of other homeowners in the City, of their right to be free from unlawful searches and seizures.

69. The reason the City and their Agents fail in this respect is because they are driven by profit making rather than a legitimate governmental interest in preserving and protecting the safety and welfare of occupants of housing.

70. As a direct result of and due to the driving force behind the City's constitutional violations, Plaintiff and thousands like them have been forced to pay unlawful fines and fees out of fear of continued levy and possible jail time; Plaintiff and thousands like it have also been forced to permit unconstitutional

inspections in exchange for their ability to exercise their right to operate their business and use and benefit from their property.

## COUNT FIVE
## INJUNCTIVE RELIEF

71. Plaintiff incorporates the preceding paragraphs.

72. The City continues to mandate warrantless searches under their Inspection Ordinances.

73. The City continues to threaten Plaintiff, and those similarly situated, with fines, fees, criminal charges, and deprivation of certificates of compliance where these warrantless inspections are not granted for any reason.

74. Unchecked, the City will continue to issue criminal tickets to Plaintiff and those similarly situated for failing to comply with the City's unlawful ordinances.

75. Given these circumstance the losses to Plaintiff and other owners of real property in the City are imminent and as such Plaintiff request injunctive relief and an order stopping the City from its illegal and unconstitutional practices.

## COUNT SIX
## DECLARATORY RELIEF

76. Plaintiff incorporates the preceding paragraphs.

77. An actual controversy exists between Plaintiff and the City of Allen Park regarding their administration of the Inspection Ordinances in violation of clearly established constitutional rights.

13

78. Plaintiff and others similarly situated are entitled to a declaration of their rights to be free from warrantless searches and seizures and ask that the Court determine that the City must comply with constitutional requirements.

## COUNT SEVEN
## VIOLATION OF 42 USC 1983

79. Plaintiff incorporates the preceding paragraphs.

80. Plaintiff and the class of those similarly situated have a constitutional right to challenge the City's unlawful Inspection Ordinances.

81. As set forth above Defendants then proceeded to prosecute and collect fines and fees from Plaintiff, and those similarly situated, in violation of their clearly established rights.

82. The City has deprived homeowners of property and rights related thereto and is liable to the Plaintiff and those similarly situated pursuant to 42 USC 1983.

83. As set forth above Defendants have also deprived Plaintiff and those similarly situated of their right to be free from unconstitutional searches and seizures.

84. Pursuant to 42 USC 1988, in any action or proceeding to enforce Section 1983 the Court, in its discretion, may allow the prevailing party a reasonable attorney fee as part of the costs.

## VII.   CLASS ALLEGATIONS

85. Plaintiff incorporates the preceding paragraphs.

86. All Plaintiff and putative class members are also subject to the City's unconstitutional Inspection Ordinances are forced to succumb to the City's will for warrantless searches under the threat of criminal penalties.

87. <u>Class Definition.</u> Plaintiff seeks to certify the following classes

   A) All persons and entities that paid any rental registration or inspection fees to the City of Allen Park at any time from 2012 through the date of final judgment under the City's unconstitutional Inspection Ordinances that requires property owners to forfeit their rights to be free from unreasonable searches and seizures; AND

   B) All persons and entities that have been deprived of a certificate of compliance for refusing or otherwise failing to have their property unconstitutionally inspected by the City of Allen Park at any time from 2012 through the date of final judgment under the City's unconstitutional Inspection Ordinances that requires property owners to forfeit their rights to be free from unreasonable searches and seizures.

88. <u>Numerosity</u>.  The proposed classes are so numerous that joinder of all members is impracticable.  While the exact number of class members is not now known, Plaintiff believe the class number is in excess of 2,500 members. These members may be readily identified from Defendant's own records.

89. <u>Commonality.</u> There are questions of law or fact common to the members of the class that predominate over questions affecting only individual members.

90. Among the questions of law or fact common to the class are the following:

   a)    Does the City's Inspection Ordinances facially permit unconstitutional warrantless searches?

15

d)      Does the City's Inspection Ordinances, as applied, violate the 4th Amendment of the U.S. Constitution?

91.     <u>Typicality.</u>  The harm suffered by Plaintiff is typical of the harm suffered by other class members differing only in amount.  Accordingly, the claims of Plaintiff are the same as those of the other class members.  Resolution of these common questions will determine the liability of the Defendant to Plaintiff and the class members in general.  Thus, the claims properly form the basis for class treatment in this case.

92. Although the amount of damages between individual class members may vary, the underlying liability issues remain the same as between all members of the class and the Defendant.

93. <u>Adequacy of Representation.</u>  The represented parties will fairly and adequately assert and protect the interest of the class.  Plaintiff has already demonstrated its willingness to pursue this litigation on their own behalf, and have no known conflicts with the class members.

94. Plaintiff's co-counsel will also fairly and adequately represent the interest of the class.  Attorney Mark K. Wasvary and Aaron D. Cox are well versed in the facts and substantive law underlying the Plaintiff's claims and has previously been certified to represent a class in multiple lawsuits involving the IPMC and other

Constitutional issues.[1]

95. This class action is maintainable under Federal Rule of Civil Procedure 23(b).

96. The maintenance of this action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

a) The prosecution of separate actions by or against individual members of the class could create a risk of inconsistent or varying adjudications with respect to individual members of the class that would confront the party opposing the class with incompatible standards of conduct; and/or

b) The prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to

---

[1] Mark K. Wasvary has been certified as class counsel in the following lawsuits in the United States District Court for the Eastern District of Michigan: *Village Center Associates, et.al. v City of Detroit*, USDC Case No. 07-12963, *Lola Valley Terrace Association v Charter Township of Redford*, USDC Case No. 09-11238, *Lanson Development Company LLC v City of Dearborn*, USDC Case No. 09-13956, *Eghigian v Fifth Third Bank*, USDC Case No. 07-14406, *Garner, et.al. v City of Roseville, et.al*, USDC Case No. 16-10760, *Garner Properties & Management, LLC v Township of Redford*, USDC Case No. 16-14100, *Garner v City of Taylor*, USDC Case No. 16-cv-13374, *NILI 2011, et.al. v City of Warren*, USDC Case No. 15-13392. Mark K. Wasvary has also been certified in the Wayne County Circuit Court in the matter of *Woodside Square Limited Partnership v City of Romulus*, Case No. 09-019233-CZ and the Oakland Circuit Court in the matter of *Kelly, et.al. v Birmingham Public Schools,* Case No. 12-130333-CZ. Aaron D. Cox has been certified as class counsel in the following lawsuits: *Garner Properties & Management, LLC v Township of Redford*, USDC Case No. 15-14100, *Garner, et.al. v City of Roseville*, USDC Case No. 16-10760, *Garner v City of Taylor*, USDC Case No. 16-cv-13374 and *NILI 2011, et.al. v City of Warren*, USDC Case No. 15-13392.

individual members of the class that would as a practical matter be

dispositive of the interests of other members not parties to the

adjudications or substantially impair or impede their ability to protect

their interests.

97. The party opposing the class has acted or refuses to act on grounds that

apply generally to the class, so that final equitable, injunctive or corresponding

declaratory and monetary relief is appropriate respecting the class as a whole.

Specifically, Defendants have and continue to enforce an ordinance that is

unconstitutional on its face and as applied due to lack of a procedure to seek a

warrant to search a rental property.

98. The questions of law or fact common to class members predominate over

any questions affecting only individual members, and as such a class action is

superior to other available methods for fairly and efficiently adjudicating the

controversy.

99. The action is and will be manageable as a class action and in fact more

manageable than the prosecution of separate actions in various forums and venues.

100.   In view of the complexity and importance of the constitutional issues

and expense of the litigation, the separate claims of individual class members are

insufficient in amount to support separate actions.

101.   It is probable that the amount which may be recovered for individual

18

class members will be large enough in relation to the expense and effort of administering the action to justify a class action.

102.     Plaintiff is not aware of any members of the proposed class that have filed similar litigation nor are Plaintiff aware of any pending similar litigation in which the City is a Defendant.

103.     The class action is the appropriate method for the fair and efficient adjudication of the controversy.  The legal and factual bases for the Plaintiff' claims are the same as for the claims of all class members.  The only difference between individual claims is the severity of the harm and resulting damages. Adjudicating this case on a class wide basis will promote substantial judicial economy by eliminating the likelihood of multiple cases (perhaps thousands) turning on the same questions of law and fact.  The class action will also provide the Plaintiff with the only meaningful avenue for relief, due to the economy of spreading their litigation costs, thereby reducing each individual's expenses over the class and enabling counsel to pursue the litigation by aggregating the claims. Further, the class action will save the Defendant the burden of defending multiple suits in multiple forums.

## IX.   RELIEF REQUESTED

WHEREFORE, on behalf of themselves and others similarly situated, Plaintiff requests the following relief:

A.      That this action be determined as proper to be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b), together with an order appointing the named Plaintiff to represent the class and subclass and certifying Plaintiff' counsel to represent the class and subclass;

B.      The injunctive and declaratory relief as applicable and specified in Counts Five and Six;

C.      An award of damages, including all applicable interest, in an amount to be determined at trial;

D.      An award of costs of this suit, including reasonable attorney's fees, as provided by 42 USC § 1988 or on other grounds;

E.      An award of an incentive fee to the named Plaintiff for having the courage to come forward and challenge the City and the manner in which it administers its unconstitutional ordinances; and/or

F.      Any other relief as necessary to redress the violation of Plaintiff' rights secured by the Constitution and laws.

## DEMAND FOR JURY TRIAL

Plaintiff demand a trial by jury on all claims and issues so triable.

Respectfully submitted by:

THE LAW OFFICES OF AARON D. COX, PLLC
Co-Counsel for Plaintiff
23380 Goddard Rd.
Taylor, MI 48180

734-287-3664

/s/ Aaron D. Cox, Esq.
By: Aaron D. Cox (P69346)
aaron@aaroncoxlaw.com


MARK K. WASVARY, P.C.
Co-Counsel for Plaintiff
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
(248) 649-5667

/s/ Mark K. Wasvary
By: Mark K. Wasvary (P51575)
mark@wasvarylaw.com