**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Investment Realty Services, LLC,

                  Plaintiff,      Case No. 18-11476

v.                            Judith E. Levy
                              United States District Judge

City of Allen Park,

                              Mag. Judge David R. Grand

                  Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND *SUA SPONTE* GRANTING PARTIAL SUMMARY <u>JUDGMENT FOR PLAINTIFF [25]</u>**

This is a case about a municipal ordinance. Like other cities in Michigan, Defendant City of Allen Park maintains a property management code to regulate its supply of rental housing units. Under Chapter 10, Articles III and IV of the City's Code of Ordinances, would-be landlords are required to register rental property with the city and obtain an inspection of the property prior to tenancy and once every three years thereafter. As a landlord of property in the city, Plaintiff

Investment Realty Services, LLC is subject to the terms and requirements of the city code.

In February 2018, Defendant initiated criminal proceedings against Plaintiff for failure to have its rental property inspected prior to tenancy. Three months later, Plaintiff filed this suit, challenging the property maintenance code as unconstitutional, both facially and as-applied, on the grounds that it coerces consent of warrantless searches through the imposition of criminal penalties. After the close of discovery, Defendant moved for summary judgment on all claims, asserting that Plaintiff lacks standing to challenge the code, the code does not provide for warrantless searches, and even if it does, the code provides owners and landlords sufficient precompliance review. (ECF No. 25.)

The Court heard oral argument on December 5, 2019. Chapter 10, Articles III and IV of Allen Park's Code of Ordinances are unconstitutional on their face in that they impose criminal penalties for failure to have a property inspected without the opportunity for precompliance review of the need for an inspection. For this reason, the Court gives notice of its intent to grant summary judgment to Plaintiff on its § 1983 claim seeking injunctive and declaratory relief. The Court

grants Defendant's summary judgment motion with respect to all other claims.

## I.    Background

### City Code

Michigan law empowers cities to adopt codes pertaining to building safety. MCL 117.3(K). In particular, the law allows cities to adopt pre-existing codes, such as the International Property Maintenance Code (IPMC). *Id.* The IPMC, in relevant part, provides standards and enforcement procedures related to the maintenance of rental property. The City of Allen Park adopted the 2009 version of the IPMC. Allen Park, MI, Code of Ordinances ch. 10, art. III, § 83.[1]

The Code of Ordinances imposes obligations and outlines penalties for noncompliance for landlords and owners who wish to rent property within the City. Landlords and owners must register residential rental property with the City "within 30 days after assuming ownership or control of the property." Ch. 10, art. IV, §117. Prior to being certified for rental and subsequently every three years, all residential real property must pass an inspection pursuant to the IPMC, after which the property

---

[1] All subsequent citations to the Allen Park Code of Ordinances will include only the code chapter, article, and section.

will receive a certificate of inspection. Ch. 10, art. IV, §§ 119-121. The IPMC empowers city officials to inspect property:

> [W]here it is necessary to make an inspection to enforce the provisions of this code, or whenever the code official has reasonable cause to believe that there exists in a structure or upon a premises a condition in violation of this code, the code official is authorized to enter the structure or premises at reasonable times to inspect or perform the duties imposed by this code, provided that if such structure or premises is occupied the code official shall present credentials to the occupant and request entry. If such structure or premises is unoccupied, the code official shall first make a reasonable effort to locate the owner or other person having charge or control of the structure or premises and request entry. If entry is refused, the code official shall have recourse to the remedies provided by law to secure entry.

Intern. Prop. Maintenance Code § 104.3 (2009). A landlord's refusal to allow an inspection of rental property can lead to criminal charges: "[A]ny person who refuses to allow an inspection required under this article or interferes with the code official in the discharge of his duties shall be guilty of a misdemeanor." Ch. 10, art. III, § 85(c).

There is no appeals process for a landlord who wishes to contest the need for an inspection prior to compliance. Although the IPMC provides procedures through which a person may appeal actions by code officials, Intern. Prop. Maintenance Code § 111 (2009), Allen Park, in adopting the

IPMC, struck this provision. Instead, the Code of Ordinances provides that "[a]ppeals are controlled by article XIII, chapter 6 of the Allen Park Code of Ordinances." Ch. 10, art. III, § 84. Article XIII, Chapter 6 of the Allen Park Code of Ordinances does not exist.

## **Plaintiff's Property at 15339 Euclid Avenue**

Plaintiff Investment Realty Services is a property management company that owns or leases residential rental property in the City of Allen Park. Investment Realty Services also transacts business under the name SBYC Garner, LLC. (ECF No. 30-2.) Christopher Garner both manages Plaintiff and is Plaintiff's primary member. (ECF No. 25, PageID.185.)

On October 13, 2017, Plaintiff purchased the residence at 15539 Euclid Avenue, Allen Park, Michigan. (ECF No. 25, PageID.185; ECF No. 25-4, PageID.267.) On January 1, 2018, Plaintiff sold the property to Itay 2017, LLC. (ECF No. 25, PageID.186; ECF No. 25-8, PageID.299). Itay 2017 and Plaintiff promptly entered into a lease agreement, which empowers Plaintiff to fully manage the property: "[Itay] specifically designates [Plaintiff] as [Itay's] Agent and grants [Plaintiff] the full right and power to take any action with respect to the Property that [Plaintiff]

deems appropriate. . . ." (ECF No. 25-11, PageID.364.) This includes the power to sublease, sue, appeal property taxes, insure the property, and take "any and all other acts, except selling or mortgaging the Property, that [Itay] could perform related to leasing and owning the Property." *Id.*

On January 11, 2018, Plaintiff, under the name SBYC Garner, subleased the property to a third party, David Potts. (ECF No. 25, PageID.187.) On August, 21, 2018, Plaintiff–again under the name SBYC Garner–subleased the property to another third party, Obinna Kokeke. (ECF No. 30-4, PageID.800.) On June 1, 2019, Itay 2017 sold the property back to Plaintiff. (ECF No. 25-8, PageID.299.)

## Code Enforcement

On February 20, 2018, Allen Park sent Plaintiff a notice of the requirements to register the property as a non-homestead, non-owner-occupied rental property and to obtain a certificate of inspection. (ECF No. 25, PageID.186; ECF No. 25-5, PageID.269). The notice reads, "Our records indicate that you have not obtained a certificate of inspection for this property. You must do so within 30 days. Failure to do so will result in court action. If you no longer own this property, please notify us at (313) 928-4441." (ECF No. 25-5, PageID.269.)

Two days later, despite the notice's thirty-day timeframe, the City issued a citation to Plaintiff for three code violations: 1. failure to register rental property; 2. failure to obtain a rental inspection; and 3. failure to obtain a rental certificate. (ECF No. 25-6, PageID.271). Each alleged violation was a criminal misdemeanor. *Id.* Importantly, the citation notes that a first notice was sent on January 10, 2018, and that the February 20, 2018 notice was sent in error. *Id.* Defendant included an unsigned copy of this January 20 letter in its supplemental brief.[2] (ECF No. 29-3.) Regardless, the City of Allen Park dismissed the citation, citing the two-day gap between the February 20 notice of violation and the criminal charges. (ECF No. 25, PageID.186.)

Itay 2017, not Plaintiff, ultimately completed a Rental House Registration on February 26, 2018, listing the tenant as David Potts. (ECF No. 29-5, PageID.755.) Itay 2017 had the property inspected and received notice of violations on April 10, 2018. (ECF No. 29-6, PageID.757.) Itay 2017 received a certificate of compliance on August 2, 2018. (ECF No. 25-10, PageIDs.360-62.) Garner Properties &

---

[2] It is an open question of fact whether Defendant sent, and Plaintiff received, the January 20, 2018 notice. However, that issue is immaterial because the code's failure to provide an opportunity for precompliance review is dispositive.

Management, LLC paid the $200 rental registration and inspection fee. (ECF No. 27-5, PageID.484.) Pursuant to Plaintiff's lease agreements, Garner Properties & Management, L.L.C. billed the fee to Plaintiff. (ECF No. 30-5, PageID.803.)

On May 1, 2018, Plaintiff filed its complaint in this case. (ECF No. 1.) Plaintiff uses the City's February 22, 2018 citation as a means to bring a facial challenge to Allen Park's rental property ordinance. Plaintiff challenges two provisions that it refers to as the "Inspection Provisions": IMPC § 104.3 and Chapter Ten, Article III, Section 85(c). IPMC § 104.3 gives code officials vast authority to undertake inspections; Chapter Ten, Article III, Section 85(c) imposes criminal penalties on property owners who refuse to allow inspections. Plaintiff alleges that the composite effect of these provisions is that property owners who wish to rent property face a catch-22 of either submitting to warrantless searches or facing criminal penalties.

## II.   Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not

grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)). In this case, the material facts are not in dispute. Summary judgment is appropriate. *See Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009) (noting that summary judgment is appropriate where material facts are mostly settled and question before the court is purely legal).

## III. Analysis

Before addressing the merits of Defendant's motion, the Court must first parse Plaintiff's complaint to determine which of its claims are properly brought.

### A. Plaintiff's Claims

Plaintiff's counsel are no strangers to litigation of this type, having previously represented clients (including Plaintiff) in challenging nearly identical ordinances in the Michigan cities of Warren (*Nili 2011, LLC v.*

*City of Warren*, Case No. 15-13392 (E.D. Mich. Sep. 28, 2015)), Redford (*Garner Props. & Mgmt. v. Redford*, Case No. 15-14100 (E.D. Mich. Nov. 23, 2015)), Detroit (*MS Rentals, LLC v. Detroit*, Case No. 18-10165 (E.D. Mich. Jan. 15, 2018)), Centerline (*Halpern 2012, LLC v. Centerline*, Case No. 18-11887 (E.D. Mich. June 13, 2018)), and Southfield (*Oron 2015, LLC v. Southfield*, Case No. 18-12671 (E.D. Mich. Aug. 27, 2018)). Despite this, Plaintiff's complaint has structural flaws: of Plaintiff's seven alleged claims, only two present viable causes of action.

Plaintiff styles its amended complaint as seven standalone causes of action: violation of the Fourteenth Amendment, violation of the Fourth Amendment, unjust enrichment, municipal liability, injunctive relief, declaratory relief, and violation of 42 U.S.C. §1983. (ECF No. 17, PageID.91-98.) However, Plaintiff's suit is properly framed as two standalone causes of action: a 42 U.S.C. §1983 suit for Fourth Amendment violations seeking declaratory and injunctive relief and damages, and a standalone state law claim for unjust enrichment. At the December 5, 2019 hearing, Plaintiff abandoned its Fourteenth Amendment due process claim. Plaintiff's remaining claims merely describe the § 1983 action. Outside of challenging actions by federal

officers, *see Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the Fourth Amendment is not a standalone cause of action. Instead, 42 U.S.C. §1983 provides the vehicle through which Plaintiff must bring its constitutional challenge. Declaratory and injunctive relief are remedies Plaintiff seeks in its § 1983 action, not independent causes of action. And although Plaintiff's claim for municipal liability mirrors the Supreme Court's language in *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 663 (1978), which held that municipalities may be sued under 42 U.S.C. § 1983, municipal liability is not itself a cause of action. Therefore, the Court construes Plaintiff's complaint as bringing a Fourth Amendment § 1983 claim and a state law claim for unjust enrichment and will address them accordingly.

## B. Standing

A plaintiff must have standing for each claim it raises. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352–53 (2006). Standing requires a plaintiff to show an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Defendant argues that because Plaintiff lacks an expectation of privacy, it cannot have experienced a Fourth Amendment violation and therefore lacks standing to bring its Fourth Amendment claims. Defendant relies on the Sixth Circuit case *Shamaeizadeh v. Cunigan* for the proposition that property owners do not automatically have a reasonable expectation of privacy in homes when they act as landlords and rent to third parties. 338 F.3d 535, 544 (6th Cir. 2003). Plaintiff responds that it need not have a reasonable expectation of privacy because it can be, and has been, charged or cited under Allen Park's ordinances. (ECF No. 27, PageID.401.)

Plaintiff is correct. While *Shamaeizadah* may prohibit a property owner from asserting a Fourth Amendment challenge to a specific search or seizure, nothing in the Sixth Circuit's opinion bars Fourth Amendment challenges to a statute or local ordinance under which a plaintiff has been cited. *See Landon v. City of Flint*, 2017 WL 2806817, at *4-5 (E.D. Mich. Apr. 4, 2017). Plaintiff was charged with a criminal citation under Allen Park Code of Ordinances Chapter 10, Articles III and IV; this charge constitutes an injury-in-fact sufficient to generate standing to challenge the validity of the ordinances. *See Faustin v. Denver*, 268 F.3d 942, 948

(10th Cir. 2001) (holding that a plaintiff had standing to challenge constitutionality of city ordinance even though charges against the plaintiff had been dismissed). While Plaintiff does not seek damages stemming from the charge itself, Plaintiff may seek declaratory relief that the issuance of the citation was a constitutional violation.

Defendant also argues that Plaintiff does not have standing to pursue injunctive relief. Allegations of past injury do not generate standing to bring an action for injunctive relief; a plaintiff must show "actual present harm or a significant possibility of future harm." *Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006) (internal citations omitted). Alleged future harm must be "certainly impending." *Clapper v. Amnesty Intern.*, 568 U.S. 398, 401 (2013). As the Supreme Court has articulated, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

Defendant argues that because at the time it filed suit Plaintiff did not own property subject to the property maintenance code, Plaintiff did not face any threat of future injury from the City and thus cannot seek

future-oriented declaratory or injunctive relief. *See Oron 2015, LLC v. Southfield*, Case No. 17-cv-12671, 2019 WL 2502739, at *4 (E.D. Mich. June 17, 2019) (holding the same). However, the Allen Park Code of Ordinances requires "all *landlords and/or owners* of residential rental property within the city" to register and have inspected any unit prior to tenancy. Ch. 10, art. IV, §§ 117, 119 (emphasis added). While the code does not define "landlord," Plaintiff qualifies as such under any reasonable definition of the term. Although Plaintiff did not own the 15339 Euclid property at the time of filing, Plaintiff had subleased the property to David Potts beginning January 2018. Plaintiff's leasing documents show that it managed the property as landlord through August 2019. In June 2019, Plaintiff repurchased the property and became the owner once again. Plaintiff was, at all relevant times, a landlord or owner of residential rental property in the City of Allen Park subject to the property maintenance code.

When considering whether a litigant has Article III standing, a court must assume the merits of that litigant's legal claims. *See City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003); *see also Warth v. Seldin*, 422 U.S. 490, 501–02 (1975). Assuming the validity of Plaintiff's

Fourth Amendment claim, Plaintiff remains under the threat of future injury—that the City will once again criminally cite Plaintiff for violations of its property maintenance code without providing any mechanism for precompliance review. Plaintiff thus has standing to bring each of its claims, and the Court will proceed to the merits of Defendant's motion.

### C. Fourth Amendment Claim

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. The Fourth Amendment is enforceable against the States through the Fourteenth Amendment. *See Ker v. California,* 374 U.S. 23, 30 (1963).

Plaintiff's primary claim is a Fourth Amendment facial and as-applied challenge to what Plaintiff describes as Allen Park's "Inspection Ordinances." Facial challenges ask whether "the law is invalid *in toto*—and therefore incapable of any valid application." *Vill. Of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.5 (1982). Plaintiff must establish that "no set of circumstances exists under which [the ordinance] would be valid." *United States v. Stevens*, 559 U.S. 460

(2010). Plaintiff argues that, by mandating inspections of rental properties, empowering city officials to conduct inspections, and criminally penalizing owners and landlords who refuse inspections, the City of Allen Park has authorized unconstitutional warrantless searches. (ECF No. 17, PageID.91.) Because Chapter 10, Articles III and IV of Allen Park's Code of Ordinances authorize administrative searches without affording landlords or property owners an opportunity to seek precompliance review, Plaintiff is entitled to declaratory and injunctive relief. However, because Plaintiff cannot show a causal connection between the constitutional violation and the damages it seeks, Defendant is entitled to summary judgment on the issue of damages.

## 1. Facial challenge

Rental inspections are administrative searches, so Defendant need not obtain a warrant in order to conduct one. However, Defendants must provide owners and landlords the opportunity to obtain precompliance review. The Allen Park Code of Ordinances fails to provide that opportunity, and as such, it violates the Fourth Amendment on its face.

Two Supreme Court precedents guide this analysis. In *Camara v. Municipal Court*, the Supreme Court addressed the applicability of the

Fourth Amendment to a California administrative inspection program. 387 U.S. 523 (1967). San Francisco's Housing Code provided that City employees had the authority to inspect residential properties; Camara refused inspection, after which he was charged with refusing to permit a lawful inspection. *Id.* at 527. The Court held that even though "a routine inspection of the physical condition of a private property is a less hostile intrusion than the typical policeman's search for the fruits and instrumentalities of crime," such inspections were still subject to the limits of the Fourth Amendment. *Id.* at 531. However, the Court emphasized that "it is obvious that 'probable cause' to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling." *Id.* at 538. The Court identified the "passage of time, the nature of the building (e.g. a multifamily apartment house), or the condition of the entire area" as possible satisfactory standards, emphasizing that a standard "will not necessarily depend upon specific knowledge of the condition of the particular dwelling." *Id.*

The Court more recently affirmed that such inspections fell under a warrant exception as administrative searches. *Los Angeles v. Patel*, 135

S. Ct. 2443 (2015). In *Patel*, a municipal ordinance authorized police officers to perform warrantless searches of hotel records. *Id.* at 2447-48. The Court recognized that warrantless searches are "*per se* unreasonable*,*" but administrative searches, in which "the 'primary purpose' of the searches is 'distinguishable from the general interest in crime control,'" constitute a warrant exception. *Id.* at 2452 (citing *Indianopolis v. Edmond* 531 U.S. 32, 44 (2000)). Nonetheless, the Court held that in order to be constitutional, "the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Id.* The Court emphasized that "absent an opportunity for precompliance review, the ordinance creates an intolerable risk that searches authorized by it will exceed statutory limits, or be used as a pretext to harass hotel operators and their guests." *Id.* The Court declined to specify the exact form that precompliance review must take, instead reiterating that "whatever the precise form, the availability of precompliance review alters the dynamic between the officer and the hotel to be searched, and reduces the risk that officers will use these administrative searches as a pretext to harass business owners." *Id.* at 2454. The Sixth Circuit recognized *Patel*'s mandate for precompliance

review of administrative searches in *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018).

Under *Camara*, Allen Park's rental inspections are subject to the Fourth Amendment. The City's codes mandate inspections based on the passage of time (every three years) and kind of property (rental units): This requirement creates administrative standards under which *Camara* recognized "probable cause . . . must exist." Still, under *Patel*, property owners must be given the opportunity to seek precompliance review of an inspection.

The City first argues that the code cannot be read as authorizing warrantless searches: Absent consent, the IPMC directs city officials to secure entry through remedies provided by law, which the City takes to mean obtaining a warrant. (ECF No. 25, PageID.199-200.) Plaintiff counters that "remedies provided by law to secure entry" do not encompass search warrants for two reasons: first, because the language is vague, and second, because the City's representative admits that the City responds to refused inspections not with warrant requests, but with criminal citations. (ECF No. 27, PageID.396; ECF No. 27-3, PageID.448.)

The mere possibility that a city official might seek a warrant does not save the Code from Plaintiff's facial challenge. While a plaintiff bringing a facial challenge must show that the "law is unconstitutional in all of its applications," *Grange v. Repub. Party*, 552 U.S. 442, 449 (2008), courts conducting a facial analysis are to consider "only applications of the statute in which it actually authorizes or prohibits conduct." *Patel*, 135 S. Ct. at 2450 (citing *Planned Parenthood v. Casey*, 505 U.S. 833 (1992)). The Court in *Patel* focused its constitutional analysis only on those instances where hotel operators did not consent to a search and officers did not seek a warrant but instead fined the operators for noncompliance. *Id.* Here, Plaintiff's facial challenge asks this Court to do the same. As in *Patel*, "if exigency or a warrant justifies [an inspection], the subject of the [inspection] must permit it to proceed irrespective of whether it is authorized by statute." *Id.* The question in this case is whether a city official violates the Fourth Amendment by issuing a criminal citation rather than seeking a warrant for failure to acquire or allow a property inspection.

Defendant next argues that *Patel* does not mandate precompliance review for rental inspections. At the Court's December 5, 2019 hearing,

Defendant attempted to distinguish rental inspections from *Patel*'s hotel records searches. Defendant argued that precompliance review is not constitutionally required under *Patel* because Allen Park limits inspections to enforcement of other code provisions, instructs code officials to undertake inspections only at reasonable times, requires code officials to present credentials, and directs code officials to acquire warrants in the face of refused inspections. However, as Judge Lawson held in a similar case, "nothing in *Patel* supports this narrow reading." *MS Rentals v. Detroit*, 362 F. Supp. 3d 404, 416 (E.D. Mich. 2019). The risks warned of in *Patel*–"that searches authorized by it will exceed statutory limits, or be used as a pretext to harass hotel operators and their guests," 135 S. Ct. at 2454–apply with equal force in this case. As Plaintiff explains, precompliance review "would afford an owner the opportunity to explain why they are not subject to the City's ordinances at all (the property is not a rental)[,] shouldn't be required to permit an inspection (the property already has a valid certificate)[,] or at the very least the ability to challenge the scope of such inspection." (ECF No. 27, PageID.396-397.) The Fourth Amendment requires that Allen Park

provide landlords and owners with the opportunity for precompliance review.

Finally, Defendant argues that the Allen Park Code does provide for precompliance review. This is simply not true. While the IPMC includes an appeals process, Intern. Prop. Maintenance Code § 111 (2009), Allen Park did not adopt that provision. Ch. 10, art. III, § 84. Instead, the Code provides that "[a]ppeals are controlled by article XIII, chapter 6 of the Allen Park Code of Ordinances." Defendant's counsel was unable to answer the Court's questions at the December 5th hearing regarding the substance of Chapter 6, Article XIII. The Court could not locate Chapter 6, Article XIII on any online version of the Allen Park Code of Ordinances. As Plaintiff aptly deduces, "article XIII simply does not exist." (ECF No. 30, PageID.771.)

In its supplemental briefing, Defendant instead points the Court to its code provisions regulating construction. (ECF No. 29, PageID.737.) The City attempts to argue that the ordinance establishing a "Construction Board of Appeals" provides an appeals process for rental owners and landlords. This argument fails.

Chapter Ten, Article II is classified as the "State Construction Code," whereas the ordinances at issue in this case are found in Chapter Ten, Articles III (Property Maintenance Code) and IV (Residential Rentals). All seven members of the construction appeals board are required to be registered design professionals or builders, Ch. 10, art. II, § 54, further reinforcing the conclusion that the Construction Board of Appeals is limited to hearing construction appeals.

The opportunity to speak with a city official about a rental inspection notice also does not satisfy the precompliance review requirement. Although the *Patel* Court left open the exact form a precompliance review must take, at a minimum such review requires a neutral decisionmaker. *Patel*, 135 S. Ct. at 2452. The City's February 20, 2018 notice letter to Plaintiff includes the language, "If you no longer own this property, please notify us at (313) 928-4441." (ECF No. 25-5, PageID.269.) According to the City Directory, that telephone number reaches the Building Clerk, Mechanical Inspector, and Plumbing Inspector. City of Allen Park City Directory, https://www.cityofallenpark.org/Reference-Desk/City-Directory.aspx (last visited December 18, 2019). While the Court respects the public

service these individuals provide, to the extent they are responsible for the enforcement of the Code of Ordinances, they cannot qualify as a neutral decisionmaker. Moreover, the need for an inspection may be obviated for reasons other than discontinued ownership, making the limited review offered by the notice insufficient to remedy constitutional concerns.

Because Defendant's property maintenance code does not provide for precompliance review of administrative searches, the code violates the Fourth Amendment on its face. The Court is prepared to grant summary judgment to Plaintiff with respect to Plaintiff's Fourth Amendment § 1983 claim seeking declaratory and injunctive relief. Defendant may file a memorandum, of no more than ten pages and no later than January 28, 2020, setting forth any new arguments as to why Plaintiff is not entitled to such relief. Plaintiff may file a responsive memorandum of no more than ten pages by February 4, 2020. *See* Fed. R. Civ. Pro. 56(f)(1).

**2. As-applied challenge**

Because the Court finds the City of Allen Park's property maintenance code to be facially unconstitutional, it will not address Plaintiff's as-applied challenge. *Liberty Coins*, 880 F.3d at 291.

### 3. Damages

To recover damages in a § 1983 action, a plaintiff must establish a causal connection between the constitutional violation and the damages it seeks. *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 292, 608 (6th Cir. 2007). Plaintiff seeks to recover as damages all inspection fees collected by the City. (ECF No. 27, PageID.409-10) (identifying the harm not as the warrantless search but the payment of inspection fees "under an unconstitutionally coercive inspection scheme"). Plaintiff argues that owners and landlords are "coerced to pay inspection fees regardless of whether inspections were performed." (ECF No. 27, PageID.409.)

Cities are entitled to regulate rental property and to make the possibility of rental contingent on obtaining a certificate of inspection or compliance. *See 15192 Thirteen Mile Road, Inc. v. Warren*, 626 F. Supp. 803, 823 (E.D. Mich. 1985) ("[I]t is beyond all dispute that local municipalities are empowered to regulate land use in order to maintain or improve the quality of life within their communities."). Plaintiff does

not contest Defendant's right to charge for rental registrations or inspections.

Inspection fees only constitute damages here if they would not have been paid but for a constitutional violation (in this case, the lack of precompliance review). This is affirmed by the reasoning in *Patel*, which recognizes that precompliance review is unlikely to change the number of inspections required or paid for. The Supreme Court held "only that a hotel owner must be afforded an *opportunity* to have a neutral decisionmaker review an officer's demand to search the registry before [they] face[] penalties for failing to comply. Actual review need only occur in those rare instances where a hotel operator objects to turning over the registry." *Patel*, 135 S.Ct. 2453.

Plaintiff has not alleged that any fees were paid without a corresponding inspection, or that any fees would not have been paid with precompliance review. In this case, Plaintiff was ultimately billed for the February 26, 2018 inspection and registration fee for 15339 Euclid. Given that Plaintiff has leased the property to tenants since January 2018, and was required to have the property inspected in order to legally do so, that inspection fee would have been paid even were Plaintiff to have been

afforded precompliance review. Because Plaintiff has not alleged any facts showing that precompliance review would have resulted in any inspection fees not being paid, it cannot show damages. *See Halpern 2012, LLC v. City of Centerline*, No. 18-11887, 2019 WL 3456885 at *9 (E.D. Mich. July 31, 2019).

Plaintiff seeks no other damages in this case. In particular, Plaintiff does not seek damages arising from the February 22, 2018 criminal citation. Therefore, even if the Court grants summary judgment with respect to Plaintiff's Fourth Amendment § 1983 claim, Plaintiff is not entitled to damages.

### E. Unjust enrichment

"Under Michigan Law, 'unjust enrichment is defined as the unjust retention of money or benefits which in justice and equity belong to another.'" *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 643 (E.D. Mich. 2017) (quoting *Tkachik v. Mandeville*, 790 N.W.2d 260, 266 (Mich. 2010)). "A plaintiff alleging unjust enrichment must establish two elements: '(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant.'" *Id.* (quoting *Belle Isle Grill Corp. v. Detroit*, 666 N.W.2d 271,

280 (Mich. Ct. App. 2003). Ultimately, granting equitable relief of restitution "rests in the sound discretion of the court, to be exercised according to the circumstances and exigencies of each particular case." *Van Etten v. Mfrs. Nat. Bank*, 119 Mich. App. 277, 285 (1982).

Plaintiff's claim for unjust enrichment fails for the same reason that Plaintiff's claim for damages fails. Because Plaintiff has alleged no causal link between a lack of precompliance review and the payment of any fee, Plaintiff cannot show inequity resulting from the retention of fees by the Defendant. Summary judgment is granted for Defendant on this claim.

## IV. Conclusion

Chapter 10, Articles III and IV of the Allen Park Code of Ordinances are facially unconstitutional because they mandate city inspections of rental properties without allowing landlords and owners the opportunity to seek precompliance review. Plaintiff is entitled to a declaratory judgment to that effect, as well as injunctive relief requiring Defendant to provide procedures for precompliance review from a neutral decisionmaker. Plaintiff has abandoned its Fourteenth Amendment §

1983 claim, and Plaintiff has not brought forth any evidence that creates a question of material fact on its claim for unjust enrichment.

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment (ECF No. 25) is **GRANTED IN PART AND DENIED IN PART**.

The Court gives notice of its intent to **GRANT** partial summary judgment to **Plaintiff** under Federal Rule of Civil Procedure 56(f)(1) with respect to Plaintiff's Fourth Amendment § 1983 claim seeking injunctive and declaratory relief. Defendant may file a memorandum, of no more than ten pages and no later than January 28, 2020, setting forth any new arguments as to why Plaintiff is not entitled to such relief. Plaintiff may file a responsive memorandum of no more than ten pages no later than February 4, 2020.

It is further **ORDERED** that Counts I, II, III, IV, V, VI, and the part of Count VIII seeking damages are **DISMISSED WITH PREJUDICE.**

IT IS SO ORDERED.

Dated: January 15, 2020        <u>s/Judith E. Levy</u>
Ann Arbor, Michigan         JUDITH E. LEVY
                                   United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, January 15, 2020, using the Electronic Court Filing system and/or first-class U.S. mail.

s/William Barkholz
Case Manager